UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 15-51011-ws

**OAKLAND PHYSICIANS MEDICAL CENTER, LLC,**       Chapter 11
**d/b/a DOCTORS' HOSPITAL OF MICHIGAN,**
**a Michigan limited liability company,**                  Hon. Walter Shapero

     Debtor.

_____/

## UNITED STATES TRUSTEE'S FINAL BRIEF
## REGARDING CONFIRMATION OF CHAPTER 11 PLANS

Daniel M. McDermott, United States Trustee submits the following as his final argument

regarding confirmation of the two competing plans in this case:

**Preliminary Matters**

The two plan proponents are Sant Partners, LLC ("Sant") and Save the Hospital Group

("SHG").  The U.S. Trustee's remaining objection to both plans at the conclusion of the

confirmation hearings was the disclosure and treatment of potential causes of action.  In the Sant

plan and plan supplement, several causes of action are now specifically identified.  Some are

retained by the Reorganized Debtor, and others are given to the Liquidation Trust to pursue.  In the

SHG plan, there is no liquidation trust, and SHG proposes to retain all causes of action (which it

identifies by adopting the descriptions of such causes of action in the Sant plan), but the SHG plan

specifically states that the Reorganized Debtor under its plan will not pursue those causes of action.

They are identified only for the sake of preserving them in the event the case ultimately converts to

chapter 7 or is followed by yet another chapter 11 case following confirmation.

The U.S. Trustee has reached an agreement with Sant with respect to the disclosure of

potential causes of action.  This agreement involves additions to Exhibit G of the Sant plan and the

addition of language which gives the Liquidation Trust ninety (90) days to identify further causes of action which may not have been identified as of the date of confirmation. The exhibits attached to the Amended Declaration of John Ponczocha [Docket # 374] disclose some additional potential causes. The agreement reflected in what will become revised Exhibit G to the Sant plan also contains a mechanism for the Liquidation Trustee to seek the Reorganized Debtor's agreement to add a later discovered cause of action to Exhibit G or to beseech the Reorganized Debtor to bring the cause of action itself. This mechanism further allows the Liquidation Trustee to bring the matter to this Court if the Liquidation Trustee is compelled to do so.

What remains uncertain is whether all potential preference recoveries (as identified on Exhibit 3(b) to the Debtor's Statement of Financial Affairs), have been identified in either plan sufficiently to withstand a motion for summary judgment such as that which was affirmed in *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D. Mi. 2005.)

**Law**

Courts agree that causes of action can be preserved in a plan of reorganization, but are split when it comes to the issue of how much disclosure is required to preserve causes of action as contemplated by §1123 of the Bankruptcy Code.

> One approach, taken by courts in the First, Second, Third, Seventh, Ninth, and Tenth Circuits, requires little to no specificity, indicating that categorical language identifying the type or category of claims is sufficient to withstand the res judicata bar and bestow standing upon the post-confirmation plaintiff. Courts adopting this approach do not require that the plan or disclosure statement identify the prospective defendants or the particular transactions giving rise to claims. Importantly, these courts often analyze the adequacy of the preservation or retention language by examining the plan and disclosure statement together. [References omitted.]

*Preserving Estate Causes of Action For Post-Confirmation Litigation*, 32 Cal. Bankr. J. 427 at 430, 2013.

The Sixth Circuit, however, has adopted a more stringent requirement than a bare statement preserving causes of action. See, *Browning v. Levy*, 283 F.3d 761, 774 (6th Cir. 2002). Under Browing,

> …a plan seeking to preserve causes of action must identify the potential defendants and the specific cause of action with particularity, as well as the factual basis for the cause of action. The rationale employed by courts adopting this approach is that specific information regarding preserved claims is necessary for creditors and the bankruptcy court to determine the value of the preserved claims when confirming the plan.

*Preserving Estate Causes of Action, supra* at 431-32.

Courts in this district have followed *Browning.  See*, *Slone v. M2M Int'l, Inc.* (*In re G-P Plastics, Inc.*), 320 B.R. 861, 868 (E.D. Mich. 2005) (reservation of rights clause inadequate where it "fail[ed] to (1) name [defendant], (2) describe the specific cause of action, or (3) identify the factual basis for any claim against the Defendant, as required by Browning*"); Official Comm. of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.).* 299 B.R. 830, 850 (Bankr. E.D. Mich. 2003) (in dicta, the court stated that a "generic reference to 'officers and directors', [sic] would not ... comport with the requirements of Browning absent a description of specific causes of action with a summary of the factual basis for such actions that would enable creditors and other parties in interest to take such causes of action into account in valuing the Debtors' assets and assessing the Debtors' Amended Plan."

*Preserving Estate Causes of Action, supra.,* fn. 23.

**Argument On the Disclosure of Causes of Action**

Ultimately, the question comes down to whether anything beyond what has been provided in the proposed plans of Sant and SHG is required when it comes to disclosure of potential avoidance actions to effectively preserve them.  Does there need to be a reference to or inclusion of the list of payments to all entities within the ninety days (or 1 year for insiders) on the attachment to SOFA

Question 3(b) [Docket #93]? If either proponent's goal was to preserve those potential transfers to later pursue them as preferences, then the answer is probably "yes." But see, *Crowley*, 299 B.R. at 851-52 (acknowledging that that there is a "more compelling basis" to find a general reservation of rights sufficient to preserve preference actions, because "[p]referential transfers are easily identified transactions, within a definite time frame, with easily identified potential defendants" and as such "are distinguishable from actions against officers and directors.") Nonetheless, the cause of action in Crowley's -- a breach of fiduciary duty claim -- was barred because it did not meet the Browning standard.

If the plan proponents do not wish to preserve all potential causes of action with specificity (no easy task for non-debtors who may not have knowledge of all such transactions, particularly where the debtor's records are in disarray, as here)[1], and if there is no requirement under §1123 to do so, then the plans require nothing more.

**Are the Plans Proposed in Good Faith?**

The question then becomes, for the U.S. Trustee and for the Court, which must make its own independent determination of good faith in the proposal of these plans, whether the difference in how each plan proposes to deal with the causes of actions gives rise to any further objections.

On this question, the U.S. Trustee is compelled to reiterate that the hospital generated over $63 million in operating revenue in 2013, over $61 million in operating revenue in 2014, and about $29 million in operating revenue in 2015. In the past two and a half years or so, the hospital spun off units to third parties, sold practices and segments of the hospitals' operation to affiliates and doctors otherwise associated with the hospital, and by the time it filed chapter 11 was down to a general

---

[1] Though the playing field is hardly level. Sant came into the case an outsider with interest in acquiring ownership of the hospital. SHG, on the other hand, is a group which includes board members who have specific knowledge about the hospital's history, business affairs generally, and insider and board member transactions specifically.

medical floor, a psychological unit, and a part time pharmacy.   The hospital had fewer than thirty patients at the time of the filing, and had shut down its surgical unit, its emergency room, and its OB/GYN unit.   And the creditors were left holding the bag with over $27 million in unpaid claims.

The history of the hospital includes a tumultuous succession of CEO's, accounting personnel, and a striking absence of internal bookkeeping of the kind that otherwise permits debtors-in-possession to file monthly operating reports required by the U.S. Trustee.   In this case, none have been filed thus far.

The U.S. Trustee is not persuaded that the SHG plan has been proposed in good faith.   The "good faith" requirement for confirmation of a chapter 11 plan remains undefined in the Sixth Circuit, but courts have analogized the requirement to the good faith requirement for confirmation of a chapter 13 plan.

> The Bankruptcy Code does not define the term "good faith," and the Sixth Circuit has not defined it for purposes of § 1129(a)(3). But "the term is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Madison Hotel Assocs., 749 F.2d 410, 425 (7th Cir.1984). Several federal courts of appeals have applied that definition or some variation of it. See, e.g., In re Combustion Eng'g, Inc., 391 F.3d 190, 247 (3d Cir.2004) ("For purposes of determining good faith under section 1129(a)(3) ... the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." (internal quotation marks omitted))(citations omitted;)

> Although the Sixth Circuit has not defined good faith in the Chapter 11 plan confirmation context, it has done so in the context of analyzing a debtor's good faith in proposing a Chapter 13 plan, holding that courts must, based on the totality of the circumstances, determine whether the plan satisfies the purposes underlying Chapter 13:

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of

pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

... [C]ourts should take into account the totality of the circumstances confronting a debtor ... when deciding whether or not to confirm a Chapter 13 plan.

*Metro Emps. Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030, 1033–34 (6th Cir.1988) (emphasis added). Several courts have referenced *Okoreeh–Baah* when analyzing whether Chapter 11 plans were proposed in good faith. See *In re Dow Corning Corp*., 244 B.R. 673, 675–76 (Bankr.E.D.Mich.1999), aff'd, 255 B.R. 445 (E.D.Mich.2000); *In re Rivers End Apartments, Ltd.,* 167 B.R. 470, 475–76 (Bankr.S.D.Ohio 1994); *In re Gregory Boat Co.*, 144 B.R. 361, 366 n. 1 (Bankr.E.D.Mich.1992) ("There is extensive case law defining good faith in the context of the confirmation of a Chapter 13 plan.... [I]n the Chapter 11 plan context ... it is appropriate to borrow concepts of good faith from the Chapter 13 plan confirmation context [.]" (citations omitted)). That courts would do so makes sense because *Okoreeh–Baah's* holding is consistent with the approach taken by the courts cited above in the Chapter 11 context. In *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123 (6th Cir.1990), the Sixth Circuit, citing *Okoreeh–Baah*, stated that "[t]his court has suggested a twelve-part test to determine whether a debtor's Chapter 13 plan is proposed in good faith." *Caldwell*, 895 F.2d at 1126. Many of the parts of that 12–part test that were developed to analyze good faith in the Chapter 13 context would not apply in the context of a Chapter 11 plan, and the Court therefore will not apply the test here. **Nonetheless, the general principle enunciated in Okoreeh–Baah—that the Court must examine the totality of the circumstances to determine whether the plan satisfies the purposes of the particular chapter of the Bankruptcy Code under which the plan is to be confirmed—remains applicable in Chapter 11.** [Emphasis added.]

Applying Okoreeh–Baah and the other decisions discussed above, the Court must determine whether the Plans, given the totality of the Debtors' circumstances, satisfy the purposes underlying Chapter 11. **"Two primary purposes of chapter 11 relief are the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims**." *Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner)*, 490 F.3d 21, 25 (1st Cir.2007); Bonner Mall, 2 F.3d at 916 ("[W]hile the protection of creditors' interests is an important purpose under Chapter 11, the Supreme Court has made clear that successful debtor reorganization and maximization of the value of the estate are the primary purposes.") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) and *Toibb v. Radloff,* 501 U.S. 157, 164, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (footnote omitted)(**emphasis added**.)

*In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 467-69 (Bankr. S.D. Ohio E.D., 2011)

SHG's stated intent ***to retain but not to pursue*** any causes of action demonstrates that the SHG plan is not proposed in good faith. Even though SHG's plan guarantees a cash payout to unsecured creditors on par with the cash payout proposed by Sant, the best chance for maximizing the distribution to unsecured creditors includes the transfer of causes of action to the Liquidation Trust as stated in Sant's plan. The absence of good faith in SHG's plan is further established because the putative members of the Reorganized Debtor under SHG's plan include the very board members against whom such causes of action may lie. A plan that secures an advantage for insiders at the expense of creditors in not one proposed in good faith. *See In re Bush Indus., Inc.* 315 B.R. 292 (Bankr. W.D.N.Y. 2004).

## Conclusion

The U.S. Trustee maintains his objection to confirmation of the SHG plan, in its evolved state, for the Court to decide. As to the Sant plan, the U.S. Trustee's objections have been sufficiently addressed to permit the U.S. Trustee to withdraw his objection.

Respectfully submitted,

**DANIEL M. McDERMOTT**
**UNITED STATES TRUSTEE**
Region 9


By      /s/ Leslie K. Berg
        Leslie.K.Berg@usdoj.gov
        Trial Attorney
        Office of the U.S. Trustee
        211 West Fort St - Suite 700
        Detroit, Michigan 48226
        (313) 226-7950

Dated:  January 5, 2016